Case 24-1783, Gortion Inc v. Green Charter Township. Argument not to exceed 15 minutes per side. Counsel, you may proceed to the appellant when ready. May it please the Court, Robby Dubey on behalf of Appellant Green Charter Township. With me is Kyle O'Mara. I'll be reserving three minutes of time for rebuttal. Our constitutional system does not permit the judiciary to wield legislative power. That is why we are here today. Because Gortion has obtained a preliminary injunction that seemingly compels legislative action. That preliminary injunction fails on multiple levels. On a constitutional level, specific performance is not an available remedy against the government as contractor. When that performance requires legislative action. Instead, damages are the sole remedy. And when damages are available as they are here, Gortion cannot be irreparably harmed. On a substantive level, the township did not and could not authorize the supervisor to execute the development agreement. Under the reserve power and unmistakability doctrines then, even if there was a contract, none of the actions taken were a breach. Finally, the preliminary injunction fails procedurally. It does not meet the mandatory specificity requirements of Rule 65 because it only restates Section 4M of the development agreement. So unless this court has questions, I'm going to turn to the constitutional issue first. Yeah, that's fine. So I don't think there's any credible dispute that the court cannot compel legislative action. The question is, is that what it's doing here? And the answer to that is yes, as best as can be discerned. Again, with the Rule 65 confusion. Yeah, let me just ask a question about that. So why is it that the district court can't just enjoin the enforcement of the two repeal actions? And you don't have to enact anything else. It's just the repeals are enjoined. Because those are legislative acts, one. And so for the court to come in and say, I'm not going to allow you to legislate in this way because it would— So you're saying a district court, a federal court can't enjoin a statute? Because that happens all the time. It can't enjoin a statute for specific performance of a contract. Of course, if it was a civil rights issue, there's all sorts of grounds in which a statute can be enjoined. But when it's specific performance for a contractual requirement, that is when the prohibition doesn't apply, especially for this specific— Why is that as a constitutional matter? Because I guess if the question is—I mean, what you seem to be saying is that a court lacks the power to enjoin a repeal statute. But why does it make a difference whether it's in a contract action or a civil rights action? Why does the Constitution care about that? Well, so I think there's two grounds there. One is there's the sovereign immunity aspect to it for the federal government and state government. And once you get the townships, there's governmental immunity, which is obviously different. But I think it just comes down to the separation of powers, is that to enjoin that action, it has to be taking the legislative power of the township and saying, I'm not going to allow you to legislate in this way. Isn't it to enforce legislation? It's denying you the power to enforce legislation. I mean, this is obviously a very controversial sort of issue. But take just the plain old contract. You make a contract. It's absolutely ironbound contract. I'm going to pay Mr. Jones $1,000 every week. And then the township board passes a resolution which says, we're not going to pay Mr. Jones. And Mr. Jones goes and gets an injunction that says, you know, pay me because your repeal was invalid. Okay? So how are you compelling them to take legislative action? You're just compelling them to fulfill the contract. I think that that hypothetical has an issue that's not present in this case, which is that's compelling payment of damages, right? You have to pay. Well, it's not damages. It's a contract. You're fulfilling the contract. I could change it to conveying a piece of property. You have contracted to convey a piece of property. And then you pass a resolution that says, we're not going to convey the property. And a court enjoins you from enforcing your repeal contract, your repeal resolution. What's wrong with that? I think then you have the vested property interest in the land that would allow you to. But that goes to whether specific performance is an available remedy in contract, which is a separate question from. And maybe, you know, you have an argument about this, that maybe specific performance is not available. You claim damages are available. But that doesn't go to the question of whether the court has the power to enjoin a repeal action. Right? So, like, maybe we could take Judge Boggs and say, okay, the township agrees I'm going to convey you black acre to this company. And then the township, I know the township would not do this. But the township says, oh, I just learned that the owner of that business is a minority. So we're not going to do that. And then the district court says, well, you can't do that. That violates the Constitution. It's an equal protection violation. And so you could bring it as a civil rights claim, I guess. Still, you'd have the power to enjoin, right? In that instance. It doesn't require you to pass new legislation. We're just enjoining the repealer. Well, so then, so let's assume that the court then does have that power. That gets to the problem of the specific resolutions here. And that's because the water extension resolution is dependent upon there being an operative water franchise. And the court, under Michigan Constitution, the water franchise is irrevocable unless the voters make it irrevocable by referendum. To force the, basically the repeal of the repeal would be to put back into place the water franchise, which the court cannot do. It would make it irrevocable by contract. Can you repeal that water franchise after the start of litigation? Yes. And then the motion for reconsideration was brought, saying because the water franchise no longer exists, the water extension resolution cannot have effect. And so the preliminary injunction needs to reflect that. But isn't a preliminary injunction an equitable remedy? And didn't the district court basically say here, unclean hands? In other words, you made it impossible to perform your contract after the litigation was filed by repealing the franchise act. And now you say, oh, well, I can't perform the contract because after I was sued, I repealed the thing that would make it possible for me to perform the contract. Using the unmistakability doctrine of sovereign power to do so. The township cannot bind itself to make that franchise irrevocable. That franchise is always revocable. And the contract specifically says Goshen will be bound by future laws and regulations. If the contract had said future laws and regulations not inconsistent with this contract, then the township wouldn't be able to do that. But that's not what the development agreement provides. So the township is able to revoke that water franchise, period, as a sovereign power of the township given to it by the state of Michigan. Once it does that, there is no water franchise to go bring water to that property. And so the water extension resolution simply cannot have effect. If the water extension resolution is put back in by the court, that creates an implied franchise to the city of Big Rapids, which then, again, circumvents the revocability of the water franchise. Right. But even if all of that is true as a matter of law, what do you say to the equitable point that you're the one that put yourself in this position after Goshen filed a lawsuit? After Goshen filed the lawsuit, you repealed the thing that makes it possible for you to perform the contract. We would say that the remedy for that is not equitable relief. It's damages. If that breaches the contract, if the contract is not performable, the remedy for that when the government is contractor is damages against the government. If you're saying, okay, you've made it impossible to perform the contract, that's a breach. We're not going to say unmistakability allows it. We're not going to say sovereign powers allows it. We're not going to say the terms of the contract allows it. Your remedy is damages. And if you have damages, there is no irreparable harm. Can you pay the damages? The Michigan law mandates that we pay the damages. It has to go on the tax- Right, but do you have the funds to pay the damages? I mean, Goshen made a motion and said that it didn't believe that you could come up with the money to pay the damages, and you put nothing in the record to say, oh, sure, we can. I mean, you're a very small township. Well, so I think there's two distinct parts there. One is the irreparable harm analysis looks to the availability of damages, not the ultimate recovery of the party. And the idea here is, you know, like APA context is. Congress has said you cannot get damages for arbitrary and capricious regulation. It's just not an available remedy. Right. Here, that's not the case. You can get damages. So the ultimate recoverability of it is not part of the analysis. Damages are available for the breach of contract one. And then we would assert that because there is the mandatory obligation to put it on the tax rolls, it does have to get paid. Can I ask a question? So what cases do you have to support the proposition? I mean, that's an interesting point, that the irreparable harm analysis can't look at the ability of the breacher in this context or alleged breacher to pay. So we would point the court- I mean, I think that when companies are bankrupt, I think I've seen cases that say that's something that the court can consider about whether damages would be an adequate remedy at law. We would point the court to DeBeers Consolidated Mining Ltd. v. U.S. It's a 1945 U.S. Supreme Court case, 325 U.S. 212, as well as Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc. You said that really fast. I apologize. Can you say that case again? So 527 U.S. 308, a 1999 U.S. Supreme Court case, Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc. Grupo Mexicano de Desarrollo S.A. So we believe that the Supreme Court in those cases makes it clear it is the availability of a remedy at law, not the ultimate recoverability. And again, the township's position is it has to go on the tax roll. It may take a long time to pay those damages, but the township does not have a choice. What if the – are the damages readily calculable, though? I mean, it seems like there's a lot of interlinking pieces of the puzzle here. First, they have to get the water, and then they have to get – and that's going to be held up, and then they have to get other things. Well, so that's actually where I think Goshen is incorrect, because they don't have a property right to have this plant at all. They have to get the necessary siting to do it, and you have no vested property right. You have no takings claim for any of this until you get the land bought. So the $25 million they claim for purchasing land, they purchased land that did not have the requisite zoning to have the project they wanted. So they're turning around and saying, well, now we can't have this project. Now, you can never have that project until they apply for siting, which they've never done with the township. So that's one big part of it. And then the employee amounts they say that they've pledged, those are all future costs they're claiming they're going to incur that they would not incur if there was not a project. And then they point to marketing. Marketing is not part of the development agreement. So all the damages they allege, which is in a bare-bones declaration from the vice president that says potentially tens of millions of dollars, doesn't meet the specificity requirements of irreparable harm. So we don't think Goshen has shown that they have the damages they're claiming, nor do we think they have a vested right to any of the damages they're claiming, because they don't have a right to build this project at all. And the development agreement didn't give them a right. I apologize. I see my time is finished. If I could just finish that point. I'd like you to finish it, but I'd also want to circle back to Judge Larson's, I think this was kind of part of her question, period, the calculability. It seems like you're arguing two different things. It seems like on the one hand, at least I thought you were arguing that it is calculable that they've given these numbers, but by the other hand you're kind of knocking down the numbers that they've given to say, oh, but you can't get that anyway. So are they calculable or not? And I think I understand the second part. So the actual damages they could recover would have been calculable. The cost to design new water plants, the cost to create their – and they put an option, too, saying we can build our own private wells. Those damages are calculable. We thought we were going to get city water. Now we're not. Here's how much it's going to cost us. The damages that the district court relied on for the irreparable harm analysis are not tethered to the actual development agreement itself and are not recoverable damages. And even the declaration itself does not have the specificity to show how those numbers are actually being calculated. All right. Thank you. Good morning. My name is Scott Hamilton, counsel for Goshen. Unless the court has any different direction, I'd just like to respond to a couple of points the council made and then make a few additional ones as well. I'd like really to go directly to the question of calculability of damages and irreparability. I believe Judge Davis made the comment there were interlinking obligations that went into the district court's analysis on irreparability, and that is exactly right. This project was years in development, beginning in the late 20-teens. It involves interlinking contracts with the Michigan Strategic Fund, the Michigan Department of Economic Development, a bunch of other highly reticulated interlinking contracts and obligations, not to mention all of the tax incentives that were negotiated to attract Goshen to Mecosta County in Michigan and specifically to Green Charter Township. They essentially said, Goshen, please come and build your facility here, and we will give you all of these incentives to the tune of hundreds of millions of dollars for an investment of approximately $2.6 billion. We came in. We negotiated a contract with the township. The township was more than happy to execute that contract and bound themselves contractually to doing certain things that are all set out in Section 4 of the contract to make this project a reality. Let me ask you a question about that because part of that, when you talk about all that went into kind of making it happen on the front end, it sounds like what you're talking about to me are the sunk costs. Like these are sunk costs that happened in order for us to be able to maybe pursue this project. Those seem like they're in whether or not you can recover those as damages. Let's set that aside for a minute. Let's assume that you could. It also seems to me that those are specific numbers. Those are readily identifiable. You gave us a handy-dandy chart, I think, actually, in your brief, setting forth some of those damages. So that makes me think that, well, these are calculable. What makes this irreparable? I think that's exactly right. Those costs are you can identify the numbers that go into it, and, in fact, we did. The irreparability is this. After the contract's entered into and we're beginning to gear up and actually begin the construction and do the things necessary to get the construction, the township now says we are going to breach this contract by rescinding the support resolution and rescinding the water extension resolution. And, by the way, we're not going to approve any of your permits when you come calling to get them issued. That is a direct breach of the contract. And therein lies the incalculability part because all of those other contracts that are all interrelated, whether it's with the strategic defense, I'm sorry, with the Michigan Economic Development Company or the other contracts that went into these tax incentives, they have deadlines. There are obligations that have to be satisfied, and none of that can be done. So are you saying that you'll be in breach of contracts that you've made with other parties in reliance on this piece? Or obligated to pay back money for those things. Those are the kinds of things that I think Judge Beckering focused on in her analysis. You can't calculate the domino effect, and that's the phrase that she used. Well, why can't you, though? I mean, if those are contracts for specific dollar amounts, why wouldn't it just be the dollar amounts of those contracts? Well, it has to do with the construction and the timeline that has been set for the development of the project with those other related entities. And it's not merely a matter of paying money. But even if it were, the question I think that Judge Larson, you raised, is not a question of calculability. It's ability to pay the judgment if one is rendered. Okay, so now I feel like you've shifted the argument a little bit. Now you're saying we could calculate the damages. For example, if you have to pay back a tax incentive, well, presumably you can just pay it back. But maybe you have to pay it back with interest or something. So we can calculate all those numbers. But now you're saying, but they couldn't pay. Well, it's two different arguments. And I am shifting. I'm not shifting the argument. I'm looking at a different argument. If you assume the calculability of damages, the question I believe that you raised is, I think, the correct one. It is a reparable injury for a plaintiff who is looking at a defendant who will be rendered unable or who is unable to satisfy a money judgment. And your best case for that is they gave us two cases that they say refute that proposition. Yeah. To tell you the truth, Judge Larson, I can't give you a case off the top of my head. But that is a well-established principle. Injunctions all the time occur when someone is about to go into bankruptcy. In order to preserve the status quo, you enjoin them. It's a relatively well-established branch of a reparable injury for a court to be able to intervene in order to allow it to enforce a judgment. And the impecunity of a defendant, that is the inability to satisfy a judgment, is a species of irreparability. Well, what about counsel's point that Michigan law actually would require them to impose this on the tax rolls? And so maybe you wouldn't get it all in one lump sum like you like, but over the next 25 years they impose a tax or however it works, I'm not a legislature, I don't know how it would be levied, but that would cause the people of Green Charter Township to pay it. We would be talking about hundreds and hundreds of millions of dollars. And as was pointed out, this argument was asserted below, and there was no response to it. And Judge Beckering took that at face value, which they did not contest, their inability to satisfy it. There may be a mechanism in place, Judge Davis, for townships to satisfy judgments, but that doesn't answer the question of, as a practical matter, is there going to be the ability to satisfy this company if they get a money judgment against them? If I could change slightly, still on the topic of irreparable injury, one thing I do want to highlight, because I don't believe the defendant in this case really gives it much attention, and that is the question of the kind of right that we're dealing with. We're dealing with an interest in real property. We are dealing with a specific location on a specific parcel or sets of parcel. It's not a contract to purchase real property, so how do the real property cases help you? Well, they're instructive, and I would say determinative. You're correct that this is not a dispute over the breach of agreement to purchase property, but it is a dispute over my client's interest in that real property and putting its facility there. They were asked to come in by the state, the county, the township for particular reasons. They evaluated other locations, and they found this one best suited their interests, to be sure, not just the four squares of the property but with the tax incentives and the whole panoply of things that went into it. But important with it or important to it was the geography, the real estate, the dirt, if you will, that they were interested in developing this property on. And the township's action in affirmatively renouncing the contract and denying Goshen's ability to build this facility in that location deprives them of an extremely beneficial interest in that realty, which is recognized because real estate is unique. You can't have two parcels in different locations that have the same qualities and characteristics. But they're not taking the property from you. You can still have the property, and you can sell it to somebody else, presumably for what it was used for before, farming, I imagine, right? So it sounds like maybe you have a regulatory takings claim or something that they've deprived you of the beneficial use of the land because they're not giving you water, but that's not this claim. Well, I think that much is right, Your Honor. There is no takings claim, and I don't think that there would need to be. This is a straight-up breach of contract claim because they are denying us use. Right, but I'm just wondering why the fact that you bought a piece of land takes us into the cases that say you didn't buy the land from them. So I guess what's your best case for the proposition that because this is a contract that collaterally involves providing water to land that we're in specific performance area? Well, it's irreparability, I guess, Your Honor, is what I'm arguing. It's the uniqueness of real estate that makes its deprivation of a right in real estate irreparable. That's what I'm arguing. And quite frankly, I think the best case is the one that I supplied as supplemental authority earlier this week. It was an opinion issued in the middle of April. And it just really stands for the very basic notion that there are special rules when you're talking about interest in real estate when it comes to injunctive relief, and courts uniformly recognize that because of the uniqueness of real estate and interests in real estate, actions that deprive a party of their interest in particular real property is by definition irreparable. And that's the simple point that I'm making in that regard. What about your option two, that you could dig your own well? So why does that not – I mean, why – you're saying because you can't get the water from big rapids anymore, you can't get water, so you can't go forward with your plant. But there was an option two, that you could dig your own well. Is that not still on the table, or why isn't that not viable? I believe that it is, Your Honor, although I say that with a little reservation because I don't know if any facts have changed in the time since we briefed this into current. But you're right. There were two alternatives, and the city of Big Rapids approved both of them. One was hooking up to the Big Rapids water system, and the second one was essentially creating your own well for the 715,000 gallons a day that would be necessary. I think that that is right, but, again, that is in connection with this particular piece of property. And now that you raised that question, I would like to address one other point. Well, can I just ask, like, does their breach of the water services agreement deprive you of the other alternative? And how should we think about that? Like, does their breach of the water services agreement mean you can't get water from Big Rapids anymore? Does it mean you can't dig your own well? My understanding is that it was the water extension resolution that the township approved when they were honoring the contract. That it was that water extension agreement that resulted in the city of Big Rapids giving the approval of the two alternative. Both alternatives. Big Rapids needs to approve your ability to dig a well on your own property. That is my understanding, yes. Oh, that's interesting. And they approved them. And this was a minor point in the briefs, but they approved them. And one of the mayor of Big Rapids, I believe, used the phrase, we want to approve them both so we don't have to come back here and do this again. So it was like advanced approval. One point that I do want to make, Judge Larson, in connection with that question, though, is this. They indicate that they're now unable to perform the contract because they have revoked the water franchise ordinance or agreement with the city of Big Rapids. And I won't, I mean, you obviously have a firm grasp of the facts regarding the inequity of that argument. They did it only after this happened and the lawsuit was filed as a way to get out from underneath the contractual obligation. But that as an option is not tethered to the alternative of digging, of making their own well, at least as far as I understand it. Okay. So just so I understand this. So if they had to perform on their contract by not enforcing their repeal of the water extension agreement or whatever the water agreement is called, that, they wouldn't have to, it wouldn't have anything to do with the franchise to get water, municipal water from the city of Big Rapids necessarily because it would still allow you to pursue option B, which is digging the well on your own property. I believe, and I say believe, I believe that is correct. But because the option that was really looked at was tethering into Big Rapids. I'm not completely certain of that. So do you understand the district court's injunction to require them to facilitate the acquiring of municipal water from Big Rapids? Or does the district court's injunction require them to help you get water through plan A or plan B? I believe the latter. That the injunction is to abide the terms of the contract, the terms of the contract which specifically said you have to do these things. And one last point on, my time's up, so unless you have any questions. If you'd like to finish your thought, but also Judge Boggs may have a question. No, I think I'm good. It was simply on the notion of the unmistakability doctrine. I mean we do make arguments, and I think they're correct, that that argument was really way below because it wasn't asserted or decided by the district court. But even if it is, this doesn't have anything to do with coercing legislation or anything like that. We're not saying that the municipality has to engage in some sort of legislative action. The only thing this injunction required was do that which you agreed to do. And for all the reasons I think that were brought out in the appellant's argument, that doctrine I don't think really has any merit with respect to reversing or modifying the injunction that Judge Beckering entered. All right, thank you. Thank you. We'll hear a rebuttal. Thank you, Your Honor. A couple of points. Opposing counsel is simply wrong on the wells. It does not require the city of Big Rapids approval to operate them for Goshen. It is only if the city of Big Rapids wants to operate the wells. But if Goshen wants to have the wells on its own property and operate it itself, it does not require any city approval. So they could dig a well on their property, and they don't need any government agency to tell them that's fine. They need the Drain Commission, but that is not governed by the city or township. That's a separate entity. The Drain Commissioner. Yes. And they'll need EGLE approval ultimately, environmental approvals from. And do they need the township's support? Because there's the support resolution that says you're going to help them get the necessary permits. So in order, if they were to go to EGLE or the Drain Commissioner, do they need the township's support to help them do that? Or is that something that they could do on their own? And if you were to oppose them, would that be taken into account? So, no, they do not need the township. They can go apply for that on their own. The support resolution is separate from the support obligation in the development agreement. So the development agreement for Article 4 says support Goshen to obtain necessary permits. There's a separate support resolution that says we support Goshen coming here, and we've argued why that isn't part of a binding contract in government speech. So, no, they do not need the township's approval. I think if this court does find that it's a binding contract, and we've argued why we don't think that it can be under Michigan law, and the township sent in a letter that said we oppose EGLE approving this, if that is a binding contract, then I think that would violate the support aspect of it. A couple other points. We talked about the water extension council said honoring the contract. The contract was signed after the water extension resolution, so it's not actually tethered to the contract. It was a previous action. And Goshen does have to wrestle with the contract that it bargained with. It bargained that the township could pass any laws, that it would be bound by future regulations and laws. And the township has the absolute authority. And Michigan law is clear. There's not even a reasonableness requirement to revoke franchises. And so Goshen can't come and say that is a breach of the contract when the Constitution and the contract both say they can pass ordinances. And then they say the township wouldn't approve any of the permits. They've never applied for a single permit from the township. They haven't even applied for zoning. And this gets to all the land real estate issues. They keep saying that they have this right to build this project. No, they don't. Without the proper zoning, they have absolutely no right to build that project. That is a necessary and mandatory step which they haven't applied for. And if the water extension resolution really is causing all this harm to them, why have they not moved to hold the township in contempt for not reinstating it? I mean, that would seem to be if the township's not putting it back in, didn't pass any resolution, that would seem to be a problem. Isn't that – maybe I didn't hear you right, but you said they can't force you to make legislation, but arguably they can invalidate legislation you've passed. So why do they need to make you affirmatively rescind your rescission ordinance? Well, I think that gets to the Rule 65 issue, that the township doesn't know what the judge did here. Did she invalidate and basically enjoin the revocation, or did she order us to pass a new water extension resolution? Under the preliminary injunction itself, it just reprints Section 4M. And so I think the idea of the contempt part is we don't know if we've been enjoined or if we've been compelled to pass new legislation. If it's the second one, there's been no holding of contempt. So I guess, Judge Bock, to your point, it would be fair to assume that they read it as enjoining the legislation, but as the plain text of the preliminary injunction itself, we don't see that. And with that reading, they're not violating the requirement that they can't make you pass new legislation? Well, I think that they are, because it specifically says that we can pass future lawful ordinances and resolutions. And part of passing a law is— But it's not lawful if it's in breach of contract. But it is a power of the township. Well, I'll rest on that. Okay. Thank you very much. Your arguments were helpful in this important but confusing case. So thanks for clarifying things for us. And we will hear the next case.